

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WALTER K. FAULK** | § | Case No. 05-60685 |
| **AND DEBRA D. FAULK** | § | |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court upon the hearing of the objections of the Chapter 13 Debtors, Walter K. and Debra D. Faulk ("Debtors"), to the allowance of proof of claim #5 filed by Eva C. Faulk ("Claimant") in the above-referenced case. Prior to the hearing, the Debtors and the Claimant resolved disputes regarding limitations and the proper crediting of certain payments made by the Debtors. The remaining issue pertains to the Debtors' assertion that the Claimant charged usurious interest on the December 15, 1995 real estate lien note executed by the Debtors in favor of the Claimant, thereby triggering certain statutory usury penalties under Texas law which, when applied, would substantially lower the balance of the note owed to the Claimant. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

---

[1] This Court has jurisdiction to consider the confirmation of the Debtor's proposed plan and his claim objection pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

**Background**

On December 15, 1995, the Debtors, Walter K. Faulk and his wife, Debra D. Faulk, executed a Real Estate Lien Note (the "Note") to Eva C. Faulk, as Trustee of the Eva C. Faulk Trust in the principal amount of $33,500.00 to purchase their current homestead located on State Highway 19 North near Athens, Texas. The Note provided that the "Annual Interest Rate on Unpaid Principal from Date" would be 6 percent and that the "Annual Interest Rate of Matured, Unpaid Amounts" would also be 6 percent. It further provided that the indebtedness would be paid in monthly installments of $282.70, to be paid on or before the first day of each month until paid, beginning on January 1, 1996 and would be secured by a vendor's lien and a deed of trust on the Highway 19 property. The parties further stipulated at the hearing to the following facts:

1. that the principal balance on the Note as of March 1, 1996 was $33,269.04;
2. that the calculations regarding the Note issued by Holdredge & Co., CPAs on March 21, 2005 reflects that the balance on the Note as of April 1, 2005 was $61,423.91;[2]
3. that, if the difference between the $61,423.91 balance in 2005 and the $33,269.04 balance in 1996 constitutes interest, then such interest reflects a rate of 15.1466%;[3]
4. that, if the difference between the $61,423.91 balance in 2005 and the $33,269.04 balance in 1996 constitutes interest, then the amount of interest exceeding 10% [5.1466%] on the 1996 balance would

---

[2] *See* Ex. P-2.

[3] The recital of this stipulated fact or fact #4 regarding the identification of interest rates does not constitute the Court's endorsement or adoption of either of them. However, in light of the ultimate conclusion reached, the accuracy of these stipulations is irrelevant.

        equal $8,449.62, calculated over the 109-month period from March 1, 1996 through April 1, 2005; and

5.      that the Debtors are the makers of the Real Estate Lien Note dated December 15, 1995, made payable to Eva C. Faulk, as Trustee of the Eva C. Faulk Trust, and that the Eva C. Faulk Trust is a trust and not a licensed lending company for the purposes of the usury statutes.

The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on April 1, 2005, and the Claimant thereafter filed Claim #5, asserting that the Debtors owed to her a secured indebtedness totaling $62,423.91, comprised of $61,423.91 "in principal and accrued and unpaid interest through the date Debtor (sic) filed his (sic) petition in bankruptcy" and an additional assessment of $1,000 in attorney's fees.[4] The Debtors assert that the filing of the proof of claim asserting such an indebtedness reflects a charging of usurious interest under Texas law. Despite the language utilized in her proof of claim, the Claimant denies that usurious interest has been charged and argues that the amounts for which she has demanded payment in excess of 10% constitute charges for late payments which she alleges do not violate the Texas usury statutes.[5]

---

[4] *See* Ex. P-3.

[5] Although never mentioned by the Claimant in her pleadings nor at the hearing, the Note contained a usury savings clause which reads as follows:

> Interest on the debt evidenced by the note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration, or prepayment [or], if already paid, credited on the principal of the debt, or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

-3-

## **Discussion**

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim, FED. R. BANKR. P. 3001(f), and is deemed allowed unless a party in interest objects under 11 U.S.C. §502(a). A proof of claim, however, does not qualify for that *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules. *See First Nat'l Bank of Fayetteville v. Circle J Dairy (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989). Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c). Likewise, if a creditor claims a security interest in property of the debtor, Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with FED. R. BANKR. P. 3001 by alleging facts in

---

However, such savings clause will not protect the Claimant against usury violations appearing on the face of the contract. *Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37, 46-47 (Tex. App. – Fort Worth 2001, pet. denied), *cert. denied*, 536 U.S. 951 (2002).

the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see World Sav. and Loan Ass'n v. Lenz (In re Lenz)*, 110 B.R. 523, 525 (D. Colo. 1990); by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy*, 112 B.R. at 300; or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question, *see T. J. Shown Assoc., Inc. v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.)*, 112 B.R. 395, 399-400 (D. Colo. 1990). If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See Consumers Realty & Dev. Co. v. Goetze (In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

*Texas Usury Law*

The Debtors complain that the Claimant has charged an amount in her proof of claim which, when compared with the agreed balance, constitutes the charging of interest at a rate in excess of the maximum amount permitted under TEX. FIN. CODE §302.001 and that, accordingly, the Claimant is subject to statutory penalties for a usury violation which will considerably reduce the amount of the debt. Contracting for, charging, or receiving interest greater than the maximum amount allowed by law constitutes usury. *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 714 (Tex. App. – Corpus Christi 1998, pet. denied). Usury statutes are designed to penalize those who intentionally charge for interest which exceeds that permitted by law. However, it is recognized that usury statutes are penal in nature and must be strictly construed. *Steve's Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tex. 1988).

Under Texas law, a usury violation is established if the following three elements are demonstrated: (1) a loan of money from a creditor to an obligor; (2) an absolute obligation of the obligor to repay the principal of the loan; and (3) the exaction by the creditor of a greater compensation than allowed by law for the use of the money by the obligor. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994); *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288 (5th Cir. 1995). There is no dispute in this case regarding the existence of the first two factors. The sole dispute is whether the Claimant exacted more compensation than was allowed by law in December,

1995 for the use of the borrowed sums.

To determine the framework to calculate the compensation allowed to be charged by the Claimant, the parties each referenced and argued the present Texas usury law, as codified in Title 4 of the Texas Finance Code, as applicable and controlling to the present situation. However, whether amounts charged or collected under a note exceed the maximum amount allowed by law is determined by the law in effect as of the *inception* of the note. *Kaplan v. Tiffany Dev. Corp.*, 69 S.W.3d 212, 219 (Tex. App. – Corpus Christi 2001, no pet.); *Reagan v. City Nat. Bank*, 714 S.W.2d 425, 428 (Tex. App. – Eastland 1986, writ ref'd n.r.e), both *citing Pinemont Bank v. Ducroz*, 528 S.W.2d 877, 879 (Tex. App. – Houston [14th Dist.] 1975, writ ref'd n.r.e.). Thus, the issue as to whether the Note itself, or any effort to collect an amount under the Note, charges an interest rate in excess of the maximum amount is governed solely by the usury laws in existence in December, 1995 when the contract was created.[6]

Art XVI, section 11 of the Texas Constitution[7] grants authority to the Texas

---

[6] As a result of their mutual error, the parties did absolutely nothing to provide assistance in determining the status of the Texas usury laws as of the time of the execution of the contract in 1995.

[7] TEX. CONST. Art. XVI, sec. 11 provides, in relevant part, that:

> The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious; provided, further, that in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6%) per annum.

Legislature to establish maximum rates of interest to be charged in various types of transactions.[8] As of the time of the contract execution in December, 1995, the Texas Legislature had exercised that authority through various statutes, including TEX. REV. CIV. STAT. art. 5069-1.02 (Vernon Supp. 1995)(repealed 1997),[9] which established the general interest ceiling as follows:

> Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle.

Generally speaking, the 10% general ceiling of art. 5069-1.02 is still recognized in the current version of the statute which the Debtor argued was controlling in this case.[10]

However, in this instance, the general 10% ceiling imposed by art. 5069-1.02 is not

---

[8] Texas law in 1995 defined interest as "compensation allowed by law for the use, forbearance, or detention of money . . . . " TEX. REV. CIV. STAT. art. 5069-1.01(a) (Vernon Supp. 1995). "Conventional interest" was defined as "interest which is agreed upon and fixed by the parties to a written contract." TEX. REV. CIV. STAT. art. 5069-1.01(c) (Vernon Supp. 1995).

[9] Though Texas has had various usury statutes in its history, the genesis of the current usury provisions can be traced back to 1967 when Article 5069 was adopted into the Texas Credit Code. It expanded the scope of usury protection and for the first time provided a set of statutory penalties for violations of the interest rate ceilings. Note, "Recent Changes in the Texas Usury Statutes – Do They Affect Common Law Usury Claims?", 3 TEX. WESLEYAN L. REV. 421, 427 (1997). Article 5069 was codified into Chapter 301 et. seq. of the Texas Finance Code as of September 1, 1997, subsequent to the execution of the Note in this case. However, no substantive change in the law was intended by the codification. TEX. FIN. CODE ANN. §1.001(a) (Vernon 1998); *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 124 n.11 (Tex. App. – Corpus Christi 1999, pet. denied 2000).

[10] Slightly different wording is utilized in the current version of this statute, TEX. FIN. CODE ANN. §302.001(b)(Vernon Supp. 2005), which now also references the codification of former Article 1.06 into Chapter 305 of the Texas Finance Code.

applicable to this transaction. TEX. REV. CIV. STAT. art. 5069-1.07 (Vernon Supp. 1995)(repealed 1997) governed the determination of the maximum rate of interest on loans secured by a lien on any interest in real property. Subsection (d) of that statute provided as follows:

> (1) On any loan or agreement to loan secured or to be secured in whole or in part by a lien, mortgage, security interest, or other interest in or with respect to real property on which is located one or more single family dwellings, or dwelling units for not more than four families in the aggregate, interest may be charged at such rates as may be permitted by other applicable law or at the lesser of the following rates:
>
> > (i) 12 percent per annum; or
> >
> > (ii) a rate equivalent to the average per annum market yield rate adjusted to constant maturities on 10-year United States Treasury notes and bonds as published by the board of governors of the Federal Reserve System for the second calendar month preceding the month in which the lender becomes legally bound to make the loan plus an additional two percent per annum rounded off to the nearest quarter of one percent per annum.[11]

Because the adjustable rate in effect on December 15, 1995 under art. 5069-1.07(d)(1)(ii)

---

[11] The statute contained an alternative subsection (d), to be effective only if the floating rate provisions were to be subsequently held unconstitutional under the Texas Constitution. That contingency was never triggered.

appears to have been 18%,[12] the applicable lesser rate to this transaction was 12%. As a result, even under a calculation of merely simple interest, the Debtors were required to show that the Claimant sought interest in excess of $36,263.21 in order for the Claimant's actions in filing a proof of claim for $61,423.91 to constitute a usury violation under the applicable Texas statute.[13] The highest amount ever asserted by the Claimant reached only $28,154.87. Thus, notwithstanding all of the stipulations, discussions, and allegations regarding interest, penalties and/or delinquency charges allegedly charged by the Claimant,[14] the Debtors have failed to demonstrate that the Claimant has charged in excess of the allowed aggregate amount of $69,532.25, even based on a simple interest calculation and, accordingly, the Court must conclude that the interest charged by the

---

[12] The statute provided that such floating rate would be published by the savings and loan commissioner in the Texas Register, TEX. REV. CIV. STAT. art. 5069-1.07(d)(2) (Vernon Supp. 1995). However, perusal of the Texas Register in and before December, 1995 reveals no such publication. Based upon other interest rate ceiling calculations at or near that time, it appears as though the floating rate ceiling for single family mortgages under art. 5069-1.07(d)(1)(ii) in December, 1999 would have been 18%, though no verification of that estimate could be obtained. At any rate, it was the Debtors' burden to demonstrate what applicable rate ceiling was violated. They have wholly failed to do so.

[13] A calculation of simple interest accruing each month on the principal sum of $33,269.04 at the rate of 12% per annum [$332.69] over a period of 109 months. Obviously the compounding of interest would result in a substantially higher ceiling in the approximate range of $98,000.

[14] The parties, in erroneously applying the current Texas statute, argued in vain over the applicability of TEX. FIN. CODE §302.001(d), its endorsement of a "delinquency charge," and whether the amounts charged by the Claimant could be validated by that subsection. However, since §302.001(d) was not added until September, 2001, it is inapplicable to the parties' agreement in any event. The applicable law in that area arises from former art. 5069-1.07(f) which stated that: "If a loan for property that is to be the residential homestead of the borrower is made at a rate of interest that is greater than the rate prescribed by Subsection (d) of this Article, a prepayment charge or penalty may not be collected on the loan unless the charge or penalty is required by an agency created by federal law." TEX. REV. CIV. STAT. art. 5069-1.07(f) (Vernon Supp. 1995). In this instance, that prohibition is clearly inapplicable.

Claimant in this instance did not exceed the maximum allowed to be charged at that time on loans secured by a lien on real property.

Additionally, even if the aggregate number had exceeded the threshold amount mathematically, art. 5069-1.07(a), applicable to real estate loans at that time, mandated the application of the so-called "spreading" doctrine. That subsection provided, in relevant part:

> (a) On any loan or agreement to loan secured or to be secured, in whole or in part, by a lien, mortgage, security interest, or other interest in or with respect to any interest in real property, determination of the rate of interest for the purpose of determining whether the loan is usurious under all applicable Texas laws shall be made by amortizing, prorating, allocating, and spreading, in equal parts during the period of the full stated term of the loan, all interest at any time contracted for, charged, or received from the borrower in connection with the loan. . . .

TEX. REV. CIV. STAT. art. 5069-1.07(a) (Vernon Supp. 1995)(repealed 1997). The spreading doctrine has broader application than the enforcement of the savings clause existing in the Note because, even in its earlier common law form, the spreading doctrine is applied whether or not a note is usurious on its face.[15] Interest is not usurious unless it

---

[15] The Debtors did not attempt to plead or prove anything other than a statutory usury violation. Common law usury penalties, though subsequently banned in 1999, see TEX. FIN. CODE ANN. §305.007 (Vernon Supp. 2005), arguably might apply to a 1995 transaction. However, such an attempt would have also failed since, under common law usury, the delinquency on the matured, unpaid amounts, such as the 6% provision in the Note at issue, would be an independent obligation for the purposes of a usury calculation. As the Texas Supreme Court once stated,

exceeds the maximum amount of interest which can be charged over the full term of the loan. *Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 786 (Tex. 1977); *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937); *Pentico,* 964 S.W. 2d at 715. It is uncontested that the Note is far from satisfied. Thus, even if the Claimant's proof of claim had reflected a charge of an excessive amount of interest, the Debtors would have failed in an attempt to prove a usury violation because there was no effort to apply the spreading doctrine as required under the statute.[16]

---

> The court has uniformly decided, and we think rightly on principle no less than on abundant authority, that interest which has already lawfully matured may, together with principal, thereafter bear interest at the highest lawful rate. . . . Chief Justice Gaines demonstrates the soundness of this rule in *Crider v. San Antonio Loan Ass'n*, 89 Tex. 598-600, 35 S.W. 1047, 1048 when he says:
>
>> When the debt falls due the creditor is as much entitled to his interest as to his principal, and if the parties have elected in good faith to provide for the default, and to agree that after maturity the interest shall bear interest, it is a contract for interest upon the forbearance of a new obligation which has accrued, and not a contract for additional interest upon the original principal. The principle is, in effect, recognized by this court in those cases in which we have held that an installment of interest past due becomes principal, and bears interest, without any express stipulation to that effect.

*Bothwell v. Farmers' & Merch. State Bank & Trust Co.*, 120 Tex. 1, 7, 30 S.W.2d 289, 291 (1930) (citations and quotations omitted). *See also, Dixon v. Brooks*, 304 S.W.2d 330, 333 (Tex. App. – Houston [14th Dist.] 1980, writ ref'd n.r.e.) ["Furthermore, when interest upon principal falls due, it is a new and separate debt, completely apart from the principal debt and for which interest may be charged at the maximum legal rate."], *citing Wichita Falls Bldg. & Loan Ass'n. v. Moss*, 82 S.W.2d 171 (Tex. Civ. App. – Fort Worth 1935, writ dism'd). Thus, even if the applicable ceiling were less than 12%, the Claimant's assertion of the amount due under each clause would not constitute a common law usury violation as of the time of the contract.

[16] If timely satisfied, the original note contemplated a repayment term of 178 months or 14.83 years (a $282.70 monthly payment, applied first to interest and then to principal, until fully paid). If the spreading doctrine was properly applied to evaluate the interest charged over the entire term of this loan, any amount of interest up to $59,218.82 would appear to be within the statutory limits.

-12-

Though the Claimant did not provide a complete explanation of the deductions taken to correct the mistaken figures asserted in Ex. P-2, it is clear that the Claimant acknowledges that the overall indebtedness should not exceed $51,037.56 and the Debtors agreed on the record that, should they not prevail on the usury claim, the claim amount should be $49,496.85, thanks to a purported $1,540.71 deduction for an improper penalty under TEX. FIN. CODE §302.001. Since §302.001 is inapplicable to the present case, the Debtors have tacitly, if not directly, acknowledged that the Claimant's calculations are now correct. Further, due to the Debtors' uncredited payments on the principal balance totaling $3,447.44, the proper arrearage claim totals $27,366.86.

Therefore, based upon the evidence presented and for the reasons expressed herein, the Court concludes that the objection filed by the Debtors, Walter K. and Debra D. Faulk, to the allowance of proof of claim #5 must be sustained in part and denied in part and claim #5 filed by Eva C. Faulk is hereby allowed as a secured claim in the amount of $51,037.56, with $27,366.86 constituting the arrearage portion of such claim.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[17] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered

---

[17] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

which is consistent with this opinion.

                                                           Signed on 4/6/2006

                                                           _/s/ Bill Parker_____
                                                           THE HONORABLE BILL PARKER
                                                           CHIEF UNITED STATES BANKRUPTCY JUDGE